<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIM T., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 21-8668 (SDW) <br><br> **OPINION** <br><br> July 25, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Kim T.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge David Suna's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

**I.     PROCEDURAL AND FACTUAL HISTORY**

   **A.  Procedural History**

Plaintiff filed for DIB on April 12, 2019, alleging disability due to lupus, fibromyalgia, rheumatoid arthritis, fatigue, sleep perception disorder, depression, radiation pneumonitis, migraines, mitral valve prolapse, osteopenia, chronic cystitis, herniated discs, and avascular necrosis.  (D.E. 15 (Administrative Record ("R.")) at 96–97.)   The state agency denied Plaintiff's claim at the initial and reconsideration levels.  (R. 132–36, 140–42.)  Plaintiff then requested an administrative hearing, and ALJ Suna held a hearing on April 27, 2020.  (R. 44–95, 143–44.)  On May 7, 2020, ALJ Suna issued a written decision finding that Plaintiff was not disabled.  (R. 15–35.)  The Appeals Council denied review on December 14, 2020.  (R. 1–3.)  Plaintiff thereafter filed the instant appeal to this Court and the parties completed briefing.  (D.E. 1, 20, 21, 22.)

   **B.  Factual History**

Plaintiff alleges that she became disabled on August 14, 2018 (the "alleged onset date"), when she was fifty-nine years old. (R. 96, 111, 192–93.)  Plaintiff has a college-level education and previously worked as a clinical supervisor and practice manager.  (R. 55, 235, 986.)  The following is a summary of the relevant medical evidence in the record.

On January 25, 2016, Plaintiff went for an MRI of her lumbar spine which revealed "mild ligamentum flavum degenerative hypertrophy without central canal stenosis."  (R. 358.)  The MRI also showed a "left foraminal and far lateral disc bulge slightly displacing the left exiting L3 nerve root far laterally without impinging it."  (*Id.*)   On May 17, 2016, a DEXA scan showed mild osteopenia in the femur and lumbar spine.  (R. 367.)  An EMG scan on December 14, 2017, showed abnormalities including chronic left L4-5 radiculopathy.  (R. 602.)

In February 2018, Plaintiff saw Sammy Masri, M.D., complaining of right shoulder discomfort. (R. 599.) Plaintiff noted that she could not perform any overhead activities using her right upper extremity. (R. 599.) Corticosteroid injections did not provide long-term relief, so she began seeing an orthopedic surgeon. (*Id.*) In March 2018, Plaintiff saw Sara Dowling, PA-C. (R. 385.) Plaintiff reported constant low back pain, especially pain in her left lower extremity, which resulted in paresthesia and motor weakness. (R. 384.) A new MRI showed mild multilevel degenerative changes with scattered annular tears and mild uncovertebral joint hypertrophic disease, but did not show significant changes from Plaintiff's prior examination. (R. 386.) From August 31, 2018, to September 5, 2018, Plaintiff was hospitalized for shortness of breath and potential lung fluid. (R. 438, 442.) She was diagnosed with a fever, pleural effusion, lupus, and radiation pneumonitis. (R. 443–44.) In December 2018, Plaintiff went to physical therapy due to chronic pain in her lower back, upper arm, right shoulder, and lower leg. (R. 654.)

On May 29, 2019, Plaintiff visited Irina Raklyar, M.D., a rheumatologist, for her joint pain and stiffness. (R. 828–30.) Dr. Raklyar's examination revealed multiple tender spots with a painful range of motion. (R. 829.) At a follow-up appointment, Dr. Raklyar diagnosed Plaintiff with undifferentiated connective tissue disease, lupus, seropositive rheumatoid arthritis, joint pain, bilateral hand pain, osteopenia, insomnia, fibromyalgia, sciatica, and peripheral neuropathy due to lumbar radiculopathy. (R. 987.)

At a consultative psychological examination with Abraham Kuperberg, Ph.D., on July 30, 2019, Dr. Kuperberg opined that Plaintiff had only mild limitations in her ability to adapt, and that she was able to manage her own finances. (R. 896.) Plaintiff also had a consultative physical examination on August 5, 2019, with Ashraf Faltas, M.D., who noted that she exhibited normal range of motion aside from some limitations in her right shoulder and legs. (R. 900.) Dr. Faltas

reported that Plaintiff could "walk on the heels, toes, touch her toes without any problems and was able to squat while holding on to office furniture." (*Id.*) She had a normal gait and did not show any sensory or motor deficits. (*Id.*)

On September 18, 2019, Dr. Raklyar completed a form provided by Plaintiff's then-attorney. (R. 973–84.)[2] On the form, Dr. Raklyar circled elements of various Listings that she thought Plaintiff met, including Listing 14.06 for undifferentiated and mixed connective tissue disease. (R. 975.) Dr. Raklyar also indicated on the form that Plaintiff exhibited symptoms that interfered with her attention and concentration and that Plaintiff exhibited extreme limitations in her ability to manage work stress. (R. 981.) She further indicated that Plaintiff could not reach using her upper extremities, bend, or twist at the waist for more than fifty percent of the workday. (R. 982.) Dr. Raklyar used a checkmark to indicate that Plaintiff would likely be absent twice a month because of her symptoms. (*Id.*) Dr. Raklyar used additional checkmarks to indicate that Plaintiff had mild limitations in her interactions with others; moderate limitations in her ability to understand, remember, and apply information; moderate limitations in her ability to adapt or manage herself; and marked limitations in her ability to concentrate, persist, or maintain pace. (R. 983.) In support of these limitations, Dr. Raklyar explained that Plaintiff had "difficulty with concentration, fatigue, inattention, [and] short-term memory loss." (*Id.*) Dr. Raklyar also added that Plaintiff had "easy fatiguability; difficulty with concentration and attention; [and] inability to complete tasks." (R. 984.) Therefore, Dr. Raklyar concluded that Plaintiff could not engage in full-time competitive work. (*Id.*)

On October 4, 2019, Rosa Stagg, Plaintiff's neighbor, completed a third-party report stating that she had witnessed Plaintiff's health deteriorate over the previous four years. (R. 1114.) Ms.

---

[2] Dr. Raklyar stated on the form that she had treated Plaintiff every 1-3 months since 2016. (R. 979.)

4

Stagg mentioned Plaintiff's difficulty with lifting, carrying, and pushing due to shoulder pain. (*Id.*) Further, Ms. Stagg reported that over the previous year and a half, all of Plaintiff's health issues had "come together to have more of an impact," explaining, "[a]ll of her conditions are much worse, and she has become depressed and not able to fight to get past her limitations the way she used to." (R. 1115.)

On October 23, 2019, at a second follow-up with Dr. Raklyar, Plaintiff reported being lethargic and experiencing feelings of malaise, headaches, nausea, chills, and shortness of breath. (R. 1068.) Dr. Raklyar observed signs of a fever, fatigue, constipation, myalgia, arthralgia, paresthesia, and anxiety. (R. 1070.) However, she described Plaintiff as alert and oriented, with normal mood and affect. (R. 1071.)

In December 2019, Charles Hasson, Ph.D., performed a psychological consultative exam on Plaintiff. Plaintiff reported that she could no longer return to the "world of work" because of her fatigue and chronic pain. (*Id.*) Yet, she reported performing a daily routine which included getting dressed, showering, reading to her grandson, babysitting her grandson, cooking, using a cell phone, watching movies, driving, and completing light chores around the house. (*Id.*) Dr. Hasson diagnosed Plaintiff with unspecified depressive disorder due to her "large number of medical problems." (R. 1076.) Dr. Hasson also noted that Plaintiff could independently manage her funds. (*Id.*)

On January 30, 2020, Plaintiff visited Yisel Vasquez, NP, who opined that Plaintiff had depressive disorder and anxiety. (R. 1079.) In March 2020, Dr. Raklyar noted that Plaintiff's depression had worsened and that she experienced fibro fog. (R. 1085.) Dr. Raklyar stated that Plaintiff experienced fevers, fatigue, chest palpitations, nausea, anxiety, and depression. (R.

1084.) Plaintiff also saw Tony Wanich, M.D.,[3] who assessed Plaintiff's ability to do work-related activities on a form provided by Plaintiff's then-attorney. (R. 1166–68.) Dr. Wanich used checkmarks to indicate that Plaintiff could never lift more than ten pounds and had significant limitations in doing repetitive reaching, handling, or fingering. (R. 1167.) On the form, Dr. Wanich also circled that Plaintiff had a mild limitation in her ability to deal with work stress, and he added a checkmark to indicate that Plaintiff would be absent from work at least twice a month due to her impairments. (R. 1168.)

In April 2020, Plaintiff's social worker, Barbara Jean Keane, LCSW, also completed an assessment of Plaintiff's ability to do work-related activities on a form provided by Plaintiff's then-attorney. (R. 1107.) LCSW Keane stated that she had treated Plaintiff since January 1, 2018, and diagnosed Plaintiff with major depression and generalized anxiety disorder. (R. 1107.) LCSW Keane opined that Plaintiff experienced moderate limitations in understanding, remembering, and applying information; interacting with others; and adapting, and managing oneself, as well as marked limitations in concentrating, persisting, or maintaining pace. (*Id.*) In an attached letter to Plaintiff's attorney, LCSW Keane reported that Plaintiff's symptoms were a result of her compromised autoimmune system, including her "nonspecific tissue disorder." (R. 1108.) LCSW Keane further noted that Plaintiff would be incapable of maintaining a full-time job "due to the impact of her medical issues, not to mention the side effects of the medications she is required to take." (R. 1110.)

State agency psychologist, Joseph Bencivenne, Ph.D., reviewed Plaintiff's medical records on August 1, 2019, and found that Plaintiff had no limitation in interacting with others and mild limitations in understanding, remembering, or applying information; concentrating, persisting, or

---

[3] The ALJ's decision incorrectly refers to Dr. Tony Wanich as "Tony Manich, M.D.," (R. 32), and Plaintiff's brief incorrectly refers to Dr. Wanich as "Tony Warner," (D.E. 20 at 7).

maintaining pace; and adapting or managing oneself. (R. 104–05.) Plaintiff did not exhibit diffuse anxiety or paranoia and had good memory function. (R. 104.) Upon reconsideration, state agency psychologist Teissy Meza, Ph.D., also reviewed the record and agreed with Dr. Bencivenne's findings. (R. 124–25.) Both doctors also independently opined that Plaintiff's psychological impairments were non-severe. (R. 103, 123.) Two state agency physicians, Nancy Simpkins, M.D., and Jose Acuna, M.D., also reviewed Plaintiff's medical records. While they identified Plaintiff's spine disorder as severe, they both found that Plaintiff would be able to lift and carry up to twenty pounds occasionally and ten pounds frequently, as well as stand, walk, and sit for up to six hours in an eight-hour workday. (R. 106, 126.)

### C. Hearing Testimony

At the administrative hearing on April 27, 2020, ALJ Suna heard testimony from Plaintiff, who was represented by counsel. (R. 42–78.) Plaintiff testified that she stopped working because of her surgeries and her inability to recover from her surgeries in the way that she had hoped. (R. 61.) When she injured her back, she took frequent breaks at work and sometimes left early or arrived late. (*Id.*) She found it difficult to lift boxes. (R. 63.) She claimed she naps frequently due to feeling fatigued, and experiences brain fog, shortness of breath, and swelling in her hands. (R. 63, 65–66, 70, 71.)

The ALJ also heard testimony from independent vocational expert Dennis King ("VE King"). (R. 78–92.) VE King testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Suna, could return to Plaintiff's past relevant work as a medical assistant supervisor, and could also work other jobs, including medical records clerk, hospital admitting clerk, and medical dispatcher. (R. 82–83.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which

8

evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B.     The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing

evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   DISCUSSION

#### A.   The ALJ's Decision

On May 7, 2020, ALJ Suna issued a decision finding that Plaintiff was not disabled from the alleged onset date through the date of the decision. (R. 17–35.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) lupus, (2) fibromyalgia, (3) rheumatoid arthritis, (4) adhesive capsulitis of the right shoulder (status post right arthroscopy with rotator cuff debridement and excision of calcific tendinitis surgery), (5) degenerative disc disease of the cervical spine, (6) lumbar spine with herniated nucleus pulposus (status post posterior lumbar rhizotomy), and (7) avascular necrosis of the bilateral femoral heads in her hips. (R. 17.) Notably, ALJ Suna did not identify Plaintiff's reported depression and anxiety as severe impairments. (R. 17, 19.) At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (R. 24.)[4]

> Assessing Plaintiff's RFC prior to step four, the ALJ found that Plaintiff could:
>
> [P]erform sedentary work . . . except (1) no more than occasional overhead reaching with the upper right extremity; (2) no more than frequent operation of foot controls; (3) no more than frequent reaching with the dominant upper right extremity; (4) no more than occasional climbing of ramps and stairs; (5) never climbing of ladders,

---

[4] Specifically, the ALJ analyzed the requirements of Listings 1.02 (major dysfunction of joints), 1.04 (spinal disorders), 14.02 (systemic lupus erythematosus), 14.06 (undifferentiated and mixed connective tissue disease), and 14.09 (inflammatory arthritis). (R. 24–26.)

12

ropes, and scaffolds; (6) no more than occasional balancing, stooping, kneeling, crouching, and crawling; (7) no exposure to hazards such as unprotected heights and dangerous machinery; (8) no more than occasional operation of a motor vehicle; (9) avoid concentrated exposure to vibrations, dusts, odors, fumes, pulmonary irritants, extreme cold, and extreme heat; (10) tolerate no more than loud noise; and (11) alternate sit/standing at will while remaining on task.

(R. 26.) In making this assessment, the ALJ gave less weight to Ms. Stagg's third-party report and the attorney-form opinions of Dr. Raklyar, Dr. Wanich, and LCSW Keane. (R. 27–32.) The ALJ gave more weight to the opinions of Drs. Kuperberg, Faltas, Simpkins, Bencivenne, Meza, and Acuna. (*Id.*) The ALJ also considered Plaintiff's reported symptoms and activities of daily living. (R. 19–20, 26, 28–29.)

At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a medical assistant supervisor. (R. 32.) At step five, the ALJ relied on the VE's testimony to conclude that Plaintiff could also work as a medical records clerk, hospital admitting clerk, and medical dispatcher. (R. 34.) The ALJ therefore classified Plaintiff as "not disabled" under the Act during the relevant period. (R. 35.)

### B.     Analysis

On appeal, Plaintiff seeks remand of the Commissioner's decision. (*See* D.E. 20 at 19.) Plaintiff argues that (1) the ALJ improperly evaluated Dr. Raklyar's opinion, and (2) the ALJ's RFC determination does not incorporate all of Plaintiff's limitations. (*See id.* at 11–19.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that the ALJ improperly evaluated Dr. Raklyar's opinion, specifically its supportability. (*See* D.E. 20 at 11–17; D.E. 22 at 1–3.) The SSA has adopted various factors to consider when evaluating opinion evidence, including (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and

13

examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c)(1–5). Supportability and consistency are the most important factors in assessing persuasiveness. 20 C.F.R. § 404.1520c(b)(2); *see Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 133 (3d Cir. 2017) (holding that an ALJ must "weigh[] each medical opinion based on various factors, including whether the opinion is supported by medical signs and laboratory findings, and is consistent with the record as a whole"). In evaluating the evidence, the ALJ "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)).

Here, the ALJ properly evaluated Dr. Raklyar's medical opinions on Plaintiff's alleged mental limitations, stating:

> The undersigned has considered the opinions of Dr. Raklyar, but the undersigned finds that her opinions are not consistent with the overall evidence. For example, the claimant's treating providers noted that the claimant presented with normal affect and that she was cooperative during multiple appointments. Professionals further noted that the claimant did not present[] with any anxiety, depression, or suicidal/homicidal ideations, and that the claimant had normal mood and affect. Medical providers additionally noted that the claimant did not exhibit any diffuse anxiety or paranoi[a], and that the claimant had normal memory functioning. Moreover, the claimant's reported activities are consistent with an individual that can still function at a high level. Specifically, the claimant reported that her activities include cooking, going to church, walking, driving, using a computer, going grocery shopping, and performing household chores. The above objective evidence indicates that the claimant would not have any severe mental limitations.

(R. 22) (citations omitted). Additionally, the ALJ properly evaluated Dr. Raklyar's medical opinions on Plaintiff's alleged physical limitations, stating:

> The undersigned has considered the opinions of Dr. Raklyar, but the undersigned finds that the opinions are not consistent with the overall evidence. For example, medical professionals noted on multiple occasions that the claimant presented with normal neurological, neck, and musculoskeletal findings, and that the claimant had normal motor functioning in all four extremities, no injuries or deformities, intact or full range of motion in all extremities and her neck, and no focal deficits. On

>other occasions, providers noted that the claimant reported that she did not have any back pain, neck pain, joint pain, muscle pain, decreased range of motion, numbness, weakness, or dizziness. Providers further noted that the claimant exhibited a normal gait and station during her appointments, and that she had intact sensation, normal tone and strength, and normal movement in all areas. Indeed, medical professionals assessed the claimant with only mild limitations with overhead reaching, and medical providers noted that the claimant's physical examinations were normal (despite the claimant complaining of pain in multiple areas). . . . Importantly, the claimant reported "significant improvements" in her range of motion and that her pain level had "significantly decreased." Moreover, the claimant engages in multiple and varied activities, which indicates that she functions at a higher level than alleged. Specifically, the claimant reported that her activities include cooking, going to church, walking, driving, using a computer, going grocery shopping, and performing household chores. As such, the undersigned does not find Dr. Raklyar's opinions persuasive.

(R. 31) (citations omitted.)  ALJ Suna provided thorough, concrete rationales for why he gave Dr. Raklyar's opinions less weight.  (R. 22, 31.)  Specifically, the ALJ concluded that Dr. Raklyar's opinions contradicted the overall evidence in the record, including the medical opinions of Drs. Kuperberg, Bencivenne, Meza, and Hasson, as well as Plaintiff's reported daily activities.  (R. 22, 225–32.)

Plaintiff is correct that ALJ Suna failed to explicitly use the term "supportability" in analyzing Dr. Raklyar's opinions, but the error was harmless and does not require remand. Supportability is defined as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation."  20 C.F.R. § 404. 1520c(c)(1); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 20 C.F.R. pt. 404 and 406 (2017).  Plaintiff argues that because Dr. Raklyar is a rheumatologist who treated Plaintiff for undifferentiated connective tissue disorder and rheumatoid arthritis, the ALJ should have given more weight to Dr. Raklyar's medical opinion as to Plaintiff's mental impairments that were "caused by her physical impairments."  (D.E. 20 at 15.)  However, Plaintiff does not point to any objective evidence in Dr. Raklyar's treatment records that supports her attorney-form opinion

15

that Plaintiff meets the requirements of Listing 14.06 or that Plaintiff's mental impairments are disabling. In fact, Plaintiff's argument does not even *cite* to Dr. Raklyar's treatment notes. (*See* D.E. 20 at 11–17; D.E. 22 at 1–3.) Nor does Plaintiff explain how she meets the requirements of Listing 14.06, despite asserting that "[i]f the opinion evidence of Dr. Raklyar had been properly evaluated, Plaintiff may have been found disabled pursuant to Listing 14.06." (D.E. 20 at 16.) With respect to her mental impairments, Plaintiff provides no explanation as to why ALJ Suna was required to give more weight to the opinions of her rheumatologist and social worker than the opinions of the multiple psychologists who evaluated her in person or reviewed her medical files.

Even if Dr. Raklyar's opinions were fully supported, there was sufficient evidence in the record to support the ALJ's finding that Plaintiff was not disabled. For example, Dr. Kuperberg noted that Plaintiff could comprehend and execute simple instructions, and exhibited a stable affect, good memory functioning, concentration abilities, and judgment. (R. 894–96.) Dr. Hasson reported Plaintiff exhibited normal cognitive abilities. (R. 1075.) Drs. Bencivenne and Meza noted that Plaintiff did not suffer from diffuse anxiety or paranoia, and she had normal memory function. (R. 104.) A remand would be inappropriate here because the ALJ would recite the same evidence in the record, ultimately arriving at the same conclusion as this Court—that Dr. Raklyar's medical opinion contradicts the overall medical record. *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) ("To remand would be an idle and useless formality" that would require the Court to "convert judicial review of agency action into a ping-pong game."). Ultimately, "a reviewing court is obliged to consider the entire record, and to determine whether the evidence taken as a whole supports the administrator's decision." *Smith v. Califano,* 637 F.2d 968, 973 (3d Cir. 1981) (Adams, J., concurring). Here, ALJ Suna's findings, including his evaluation of Dr. Raklyar's opinions, were supported by substantial evidence. Any failure to explicitly address

16

supportability was harmless error and this Court will not order a remand in pursuit of the perfect written decision.

Second, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it does not include all of Plaintiff's limitations, particularly her mental limitations as opined by Dr. Raklyar and LCSW Keane. (*See* D.E. 20 at 17–19; D.E. 22 at 4.) An ALJ is responsible for determining a plaintiff's RFC, but it is the plaintiff's burden to prove the extent of her limitations. 20 C.F.R. §§ 404.1546(c), 404.1529. An RFC is assessed based on "all the relevant evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1545(a)(1). A plaintiff's subjective perspective of their symptoms in isolation can never prove disability. 20 C.F.R. § 404.1529 (explaining that subjective symptoms are evaluated in conjunction with the objective medical evidence from acceptable medical sources); *see also Hartranft*, 181 F.3d at 362 ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."). Importantly, even if the plaintiff establishes by substantial evidence that her RFC should have been more limited, "[t]he presence of [] evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

Here, the ALJ thoroughly analyzed Plaintiff's mental impairments in his decision before finding that they did not cause more than mild limitations in the four areas of functioning and did not cause more than a minimal limitation in Plaintiff's ability to do work activities. (R. 19–23.) Substantial evidence supports this finding. For example, state agency psychologists, Drs. Bencivenne and Meza, found that Plaintiff's mental impairments were non-severe. (R. 103, 123.) Specifically, Plaintiff had no limitations in interacting with others and suffered mild limitations in understanding, remembering, and applying information; concentrating, persisting, or maintaining

pace; and adapting or managing herself. (R. 104, 124.) Despite Plaintiff's complaints of memory and concentration difficulties, during her psychological evaluation, Dr. Hasson noted that she had normal cognitive abilities and was able to drive, use a cell phone, read to her grandson, attend to her personal needs, watch movies, play solitaire, and socialize with others. (R. 20, 1074.) Additionally, Plaintiff's treatment providers concluded that Plaintiff had normal affect and cooperated during numerous appointments. (R. 456, 532, 534, 553, 562, 649, 1164.) The record shows that Plaintiff did not exhibit diffuse anxiety or paranoia, and she had normal memory function. (R. 562, 565, 649, 952.) The ALJ did not find Plaintiff's mental limitations to be as debilitating as she alleged, or as disabling as Dr. Raklyar and LCSW Keane opined, and there is ample support for this finding in the record. Therefore, he did not need to include Plaintiff's additional alleged limitations in the RFC determination.

Reviewing the ALJ's thorough decision and the medical record as a whole, it is clear that there is substantial evidence—more than a mere scintilla—to support the ALJ's decision that Plaintiff can perform a limited range of sedentary semi-skilled jobs, including the jobs that the VE identified. This Court will therefore affirm.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Suna's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

Orig: Clerk
cc: Parties